UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| CHARLES B. MILLER, | ) | |
| | ) | |
| Movant, | ) | Case No. 1:07-cv-983 |
| | ) | |
| v. | ) | Honorable David M. Lawson |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| _____ | ) | |

This is a proceeding brought by a federal prisoner under 28 U.S.C. § 2255. Movant, Charles B. Miller, is serving a sentence of 24-months' imprisonment, imposed by visiting District Judge David M. Lawson in *United States v. Jeanne M. Miller, et al*, case no. 1:06-cr-45 (W.D. Mich. 2006). The court's sentence followed movant's plea of guilty to two felony charges pursuant to a plea agreement: count 1 (conspiracy to commit bank fraud, identity theft, access device fraud, mail fraud, wire fraud, and false demands against the government in violation of 18 U.S.C. § 371); and count 10 (access device fraud in violation of 18 U.S.C. § 1029(a)(2), (c)(1)(A)(i)). Those charges arose from the embezzlement of over $100,000.00 from Phoebe Shull, a disabled 73-year-old woman, who was in the care of movant's wife, Jeanne Miller. Movant did not appeal his conviction or sentence, but has filed a *pro se* application for section 2255 relief.

The section 2255 motion charges ineffective assistance of counsel and substantive sentencing error. Specifically, ground 1 of the motion asserts that trial counsel was ineffective on the following grounds: (a) failure to request an individual presentence investigation report, in

violation of movant's right to due process of law; (b) failure to investigate the actual amount of loss, resulting in erroneous restitution and erroneous guideline scoring; and (c) lying to movant to get him to agree to an erroneous restitution award. In ground 2, movant asserts several substantive sentencing errors, all arising from Judge Lawson's alleged failure to follow the requirements of 18 U.S.C. § 3553(a). Ground 3 asserts that the sentencing judge committed "plain error" by ordering restitution in the amount of $146,938.73. Finally, ground 4 asserts that the sentencing court committed plain error in assessing 10 levels for a loss of $120,000.00 to $200,000.00, because the appropriate Guidelines Manual prescribed only a 9-level increase. For relief, movant requests that his sentence be reduced to 18 months' incarceration, plus 6 months of home confinement, and that the restitution award be reduced to some unspecified number. Movant has filed a memorandum in support of his *pro se* motion.[1]

By order of reference entered September 27, 2007, Judge Lawson referred this matter to me for review of the motion and the issuance of a report and recommendation pursuant to Rule 10 of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 636(b)(1)(B). Promptly after the filing of a section 2255 motion, the court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the petitioner is not entitled to relief in the district court." RULES GOVERNING § 2255 CASES, Rule 4. If so, the petition must be summarily dismissed. Rule 4; *see Matthews v. United States*, 11 F.3d 583, 585 (6th Cir. 1993) (district court's duty to screen out

---

[1] Movant's wife and co-defendant, Jeanne M. Miller, filed a substantially similar section 2255 motion, on which I issued a report and recommendation dated December 7, 2007. *Miller v. United States*, 1:07-cv-929. The legal and factual discussion in the present report and recommendation is in places substantially similar to that filed in the co-defendant's case.

petitions that lack merit on their face).  After undertaking the review required by Rule 4, I conclude that the petition should be dismissed.

**<ins>Proposed Findings of Fact</ins>**

The government initiated this prosecution by the filing of an indictment on February 23, 2006, containing twelve felony counts, eight of which named Charles Miller as a defendant.  The indictment alleged a course of conduct that began in July 2004 and continued through September 2004.  The indictment alleged that movant's wife, Jeanne Miller, who was manager of The Britten Manor, an adult foster care facility in Lansing, Michigan, had care and custody of Phoebe Shull, a severely disabled 73-year-old woman suffering from advanced dementia.  The government alleged that Mrs. Miller, aided and abetted by movant and two other co-defendants, carried out an unlawful scheme designed to enrich themselves at the expense of Phoebe Shull through the unauthorized and fraudulent use of her personal identifying information and credit cards and that they defrauded Ms. Shull, several banks, and the United States government.

On June 28, 2006, the parties filed a fourteen-page plea agreement (docket # 58)[2] in anticipation of a guilty plea.  Relevant to the claims now pending before the court, the plea agreement contained the following provisions:

- Movant agreed to plead guilty to two counts of the indictment.  (¶ 1).

- Movant acknowledged his understanding of the penalties that he faced for each count  of conviction.  (¶ 3).

---

[2] Unless otherwise indicated, all docket numbers refer to the criminal case (case no. 1:06-cr-45).

- Movant acknowledged his obligation to pay "full restitution to the victim of the offenses." (¶ 4).

- Movant and the government stipulated to a detailed statement of facts and agreed that those facts "need not be proven at the time of the plea or sentencing."  The stipulation of facts, covering almost six pages of text, set forth acts committed by movant and his co-defendants in embezzling money from Phoebe Shull and in using Ms. Shull's identification to defraud the U.S. Treasury and several financial institutions.  The final paragraph of the stipulation read as follows:

   (O)     As a result of the conduct of Defendant, Jeanne Miller, Kenneth Goff, and Dolores Goff, which included but was not limited to the described acts, Phoebe Carol Ann Shull suffered a financial loss of between $120,000.00 and $200,000.00.

   (¶ 5(O)).

- The plea agreement also included a detailed stipulation concerning the various guideline calculations relative to determining adjusted offense level.  (¶ 7).  The parties agreed to a base offense level of 6 and to an additional ten points for the amount of loss, under U.S.S.G. § 2B1.1(b)(1)(F).  They also agreed to a two-point addition for use of an access device (§ 2B1.1(b)(10)), and a two-point upward adjustment for a vulnerable victim (§ 3A1.1(b)(1)).[3] This rendered an adjusted offense level of 20.  The U.S. Attorney further agreed to recommend a downward adjustment of two points for acceptance of responsibility, and an additional one point for timely entry of a guilty plea.  (¶ 11).

---

[3] Movant's wife, who was the moving force behind the conspiracy, received upward adjustments for being a leader or organizer and for abuse of trust.  Movant did not.

- The plea agreement contained a limitation of movant's right to appeal his sentence.  Movant gave up his right to appeal a sentence that was within the applicable guideline range and the manner in which the sentence was determined on "any ground whatsoever."  The plea agreement did allow movant to appeal on the ground that the court incorrectly determined the guideline range, if that ground were preserved at sentencing.  As originally drafted, the plea agreement also contained a waiver of movant's right to bring a section 2255 motion or other collateral attack.  (¶ 10).

- The last paragraph of the plea agreement contained an integration clause that the agreement incorporated the complete understanding between the parties, and that no other promises had been made, nor could any additional agreements, understandings or conditions be entered into unless in writing signed by all parties or other means specified within the plea agreement.  (¶ 15).

The parties appeared before the court on June 30, 2006, for purposes of entering a plea of guilty.  The government agreed to modify the plea agreement by removing the waiver of movant's right to bring a section 2255 action.  Movant entered a plea of guilty to the two felony charges identified in the plea agreement.  Judge Lawson accepted the plea and took the plea agreement under advisement pending review of the presentence report.  An amended plea agreement was subsequently filed.  (docket # 70).  It differed from the original plea agreement only by the manuscript deletion of the penultimate sentence of paragraph 10 regarding waiver of section 2255 motions.

On August 24, 2006, United States Probation Officer Ian Dingwall submitted a presentence investigation report (PSIR).  Movant's counsel, Donald W. Garthe, filed a sentencing

memorandum in response to the PSIR.  The memorandum did not contest any of the guideline

calculations, which had been the subject of stipulation in the plea agreement.   Rather, the

memorandum raised two issues.  First, counsel objected to the probation officer's recommendation

of a restitution award in the amount of $200,000.00.  The memorandum indicated that movant

believed the actual amount of loss to be approximately $95,000.00, but that efforts were ongoing to

reach agreement with the government before the time of sentencing.  Second, the memorandum

argued at length for a sentence of probation, perhaps including a period of home detention or

community confinement, in lieu of the guideline sentence of 24-to-30 months.  In support of this

argument, counsel set forth an analysis of a number of the sentencing factors enumerated in 28

U.S.C. § 3553(a).  (Sentencing Memorandum, docket # 73).  The government's responsive

memorandum (docket # 76) justified its calculation of the restitution amount, attached a schedule

in support thereof, and offered to call witnesses at the sentencing hearing on the issue.  In response

to movant's request for probation, the government argued for a prison sentence within the guideline

range, on the basis of a number of factors, including the vulnerability of the victim, the need for

deterrence, and movant's culpable role in the offense.

Movant and counsel appeared before Judge Lawson for sentencing on October 16,

2006.  (*See* Sentencing Transcript (ST), docket # 125).  In response to the court's questions, defense

counsel confirmed that he had reviewed the PSIR with movant and that, other than the issue of

restitution, there were no objections or comments.  (ST, 3).  Defense counsel further informed the

court that, "we resolved [the restitution issue] in the same manner as Mr. Miller's wife, and agreed

to the stipulated amount of $146,938.00." (*Id.*).  The court then calculated the guideline range at 24-

to-30 months, on the basis of the stipulations in the plea agreement and the court's decision to reduce the guideline by three levels for acceptance of responsibility.  (ST, 4).

The Assistant United States Attorney then made a statement, asking for a sentence within the guidelines to reflect the seriousness of the offense and to deter other people from preying on vulnerable victims.  He emphasized that the defendants had not used the embezzled money on the necessities of life but spent it on luxuries such as a digital camera, a computer system, and a speaker system, which he characterized as "binge spending."  (*Id.*, 6).  Defense counsel repeated his request for probation, emphasizing that a probationary sentence would allow movant a greater opportunity to fulfill his restitution obligation.  (ST, 7-8).  When asked if he wished to make a statement, movant said only, "I'm just sorry for what I did."  (ST, 8-9).

The court then made findings concerning a number of the statutory factors listed in 18 U.S.C. § 3553(a), which led to the conclusion that a sentence at the bottom end of the guidelines "is appropriate to serve all of the purposes that I've just enumerated."  (ST, 9-11).  The court therefore imposed concurrent terms of 24 months, followed by two years of supervised release.  The court found that the estate of Phoebe Carol Ann Shull suffered compensable injury in the amount of $146,938.73, in accordance with the stipulation of the parties, and ordered restitution in that amount.  (ST, 13).

At the end of the sentencing procedure, the court asked defense counsel if he had any comment or objection to the sentence, and defense counsel answered in the negative.  The court then addressed movant personally, asking whether he had any objection or questions about the sentence, and movant answered, "No, your Honor."  (ST, 15-16).  Movant did not appeal, but filed the present

section 2255 motion, asserting objections to the sentence that apparently arose in his mind long after the conclusion of this case.

### Discussion

Movant seeks relief pursuant to 28 U.S.C. § 2255.  This statute authorizes post-conviction relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; and (4) the sentence is "otherwise subject to collateral attack."  Despite the apparent breadth of this language, the Supreme Court has held that not "every asserted error of law can be raised on a section 2255 motion." *Davis v. United States*, 417 U.S. 333, 346 (1974).  Under *Davis*, the appropriate inquiry is whether the claimed error "is a fundamental defect which inherently results in a complete miscarriage of justice" and whether the case presents "exceptional circumstances where the need for the writ of habeas corpus is apparent." *Id*; *see Mallet v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003).  Under this standard, movant is not entitled to relief on any of the grounds asserted.

### 1.

Movant's first claim is that his counsel was constitutionally ineffective in a number of ways.  None of movant's challenges to his counsel's effectiveness withstands scrutiny.

Movant's claims of ineffective assistance of trial counsel are governed by the standards established in *Strickland v. Washington*, 466 U.S. 668 (1984).  In that case, the Supreme Court established a two-prong test by which to evaluate Sixth Amendment claims arising from the conduct of counsel.  To establish a claim of ineffective assistance of counsel, movant must prove the

following:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced movant, resulting in an unreliable or fundamentally unfair outcome.  466 U.S. at 687-88.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance."  *Id.* at 687.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.*; *see also Johnson v. Bell*, 344 F.3d 567, 572-73 (6th Cir. 2003).  Under the *Strickland* standard, counsel's failure to raise an objection can only be deemed ineffective if there is a reasonable probability that the objection would have prevailed at the time counsel failed to raise it.  *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).  In other words, counsel cannot be deemed ineffective for failure to raise a meritless objection.  *See Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998).

a.

Movant's first accusation against his counsel is that counsel "failed to request an individual presentence investigation report," thereby depriving movant of a full investigative process and depriving him of due process of law.  This claim is utterly frivolous.  Neither the Supreme Court nor the Sixth Circuit has ever held, or even intimated, that due process requires that each co-defendant in a conspiracy case receive a separate presentence investigation report.  Review of the 33-page presentence report in the present case dispels any notion that movant was somehow deprived of a thorough investigation or report of his particular circumstances.  In this court, the preparation of a single presentence report for all co-defendants in a conspiracy case is viewed as the most coherent means of presenting a complete picture to the sentencing judge and of avoiding

inconsistencies among defendants.  Had defense counsel objected to a consolidated presentence report, the objection would undoubtedly have been overruled.  Furthermore, movant cannot show that his sentence would have been any different had the probation officer prepared separate reports for movant and his co-defendants, who happened to be his wife and in-laws.  Movant cannot show a violation of his right to procedural due process in this regard, nor can he show that counsel was somehow ineffective for failing to object to a consolidated presentence investigation report.

b.

Movant's second Sixth Amendment claim is that his counsel failed to investigate the "actual amount of loss" suffered by the victim.  As a result, movant alleges that he was ordered to pay an "erroneous amount of restitution" and was deprived of his ability to argue for a reduced sentence under Guideline § 2B1.1.

Movant's claim is defeated by the terms of the plea agreement.  In the plea agreement, movant expressly acknowledged that "Phoebe Carol Ann Shull suffered a financial loss of between $120,000.00 and $200,000.00." (¶ 5(O)).  A loss in the stipulated amount results in the addition of ten points under the federal sentencing guidelines.  (U.S.S.G. § 2B1.1(b)(1)(F)).  An independent ground for rejection of this claim is movant's stipulation, in paragraph 7 of the plea agreement, that a ten-point enhancement under this guideline was appropriate.  To be sure, a defense attorney has an obligation to perform a reasonable investigation, *see Strickland*, 466 U.S. at 691, but this duty is not unlimited.  Reasonable counsel should not be held to a duty to investigate facts that the client does not contest.  *See Poindexter v. Mitchell*, 454 F.2d 564, 574-75 (6th Cir. 2006).  At the time the plea was taken, movant appeared before the court and acknowledged the accuracy of the statements

-10-

contained in the plea agreement.  Such solemn undertakings, made under oath and in open court, are binding on a defendant and estop him from now claiming that the amount of loss was somehow different from that to which he testified at the plea hearing.  *See United States v. Todaro*, 982 F.2d 1025, 1026-29 (6th Cir. 1993).

As for restitution, the parties stipulated shortly before sentencing to a restitution amount of $146,938.73.  (*See* Sentencing Transcript at 3).  Movant never objected to this award of restitution, even when asked by the court whether he had any objection or questions about the court's sentence.  (*Id.* at 15-18).  The amount of restitution falls squarely within the range stipulated to in the plea agreement.  In light of movant's own representations to the court concerning the facts of this case, he cannot prevail on a contention that he was somehow prejudiced by counsel's failure to argue for a lower amount of restitution.

Finally, in the plea agreement, movant expressly waived appellate review of his sentence, except for guideline issues raised at sentencing.  Such waivers are enforceable and bar a challenge to the sentence imposed, including the amount of restitution.  *See United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006); *see also United States v. Cohn*, 459 F.3d 490, 497 (4th Cir. 2006) (collecting cases).

c.

Finally, movant alleges that his attorney somehow lied to him to get him to agree to an erroneous award of restitution.  Neither movant's motion nor his attached brief identifies any lie told by Mr. Garthe to movant in order to induce an agreement in this regard.  Movant has attached to his memorandum a number of documents that he contends prove that the amount of restitution

-11-

was excessive.  Most of the documents are in the handwriting of his wife and presumably were available to movant at the time of sentencing.  Movant apparently had the knowledge or means of knowledge concerning the correct amount of restitution, but chose for whatever reason to stipulate to the amount of restitution in open court and to tell the court that he had no objections to the sentence.  In these circumstances, movant cannot possibly show that his counsel's "lie," whatever it may have been, induced movant to agree to an erroneous number.  The time to lodge his objection was at sentencing, not one year later.

Movant's vague accusations against his counsel arising from the sentencing process should be summarily rejected.

## 2.

Movant's second claim for section 2255 relief alleges that the sentencing judge failed to give due consideration to the statutory factors set forth in 18 U.S.C. § 3553(a).  This assertion is refuted by the sentencing transcript, which shows that the sentencing judge indeed discussed numerous section 3553 factors.  (ST, 9-11).  In addition to being factually untrue, this assertion is legally insufficient.  Relief under 28 U.S.C. § 2255 may be granted only to correct "a fundamental defect which inherently results in a complete miscarriage of justice."  *Davis*, 417 U.S. at 346.  Thus, collateral relief is not available when all that is shown is a failure to comply with procedural requirements.  *See United States v. Timmreck*, 441 U.S. 780 (1979).  The Sixth Circuit has squarely held that nonconstitutional sentencing error cannot form the basis for section 2255 relief.  *See Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  An allegation that a sentencing judge failed to

take into consideration all relevant statutory factors falls far short of a fundamental defect in the proceedings sufficient to support section 2255 relief.

### 3.

Movant's third claim is a collateral attack on the restitution order.  Movant asserts that the order of restitution was entered "in plain error."  Sentencing challenges, such as attacks on the amount of restitution, must normally be made on direct appeal, or they are waived.  *See Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).  Consequently, sentencing challenges generally cannot be made for the first time in a section 2255 motion.  *Id.*  Although the Sixth Circuit does allow a criminal defendant to contest a restitution order under section 2255 based on a meritorious claim of ineffective assistance of counsel, it does not allow a direct collateral challenge, such as that set forth in movant's third ground for relief.  *Id.*  In part 1 of this report and recommendation, I conclude that movant has not alleged grounds to support his claims of ineffective assistance of counsel.  Under Sixth Circuit authority, in the absence of a meritorious challenge to his counsel's effectiveness, movant cannot challenge a restitution order on section 2255 review.

### 4.

Movant's fourth and final ground alleges plain error in the sentencing court's assessment of a ten-level increase under guideline section 2B1.1(b)(F).  Although this claim is not entirely clear, movant appears to argue that the sentencing judge impermissibly applied a guideline amendment in a retroactive fashion and that the edition of the guidelines properly applicable to this case warranted only a nine-point assessment for losses between $120,000.00 and $200,000.00.

-13-

This allegation, like all of movant's other claims, is completely meritless. As a threshold matter, errors in computing the guideline range are not cognizable in a section 2255 proceeding, because they do not result in a miscarriage of justice. *See Grant*, 72 F.3d at 506. More basically, however, movant's factual assertion is completely false. As noted in the Proposed Findings of Fact, the offense behavior in this case took place in the year 2004. The guidelines manual in effect at the time of the offense assessed a ten-point increase for losses of more than $120,000.00 but less than $200,000.00. U.S.S.G. § 2B1.1(b)(1)(F) (Nov. 5, 2003 ed.) In fact, the guidelines have assessed ten points for this level of loss since January 23, 2003. The Guideline Manual dated March 27, 2006, upon which the probation officer based his calculations, set forth an identical table and directed a ten-point increase for losses in that amount. It is arguable that reliance on the guideline manual in effect on the date of sentencing can violate *ex post facto* rights if that manual increases the punishment over that prescribed by the edition in effect on the date the offense was committed. *See United States v. Nagi*, 947 F.2d 211, 213 n.1 (6th Cir. 1991); *see also* U.S.S.G. § 1B1.11(b)(1). In the present case, however, that principle has no conceivable application, as the guideline manual in effect at the date of offense produces the same result as the manual in effect at the time of sentencing.

**Recommended Disposition**

It plainly appears from the face of the motion and the record in this case that movant is not entitled to relief.  I therefore recommend that the motion be summarily dismissed pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings in the District Courts.

Dated:  December 10, 2007                      /s/  Joseph G. Scoville
                                               United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).